IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:17-CV-169-FL

| | |
|---|---|
| In re: )<br>)<br>LARRY ALBERT HURLBURT, )<br>)<br>      Debtor, )<br>_____ )<br>)<br>LARRY ALBERT HURLBURT, )<br>)<br>      Plaintiff - Appellant, )<br>  v. )<br>)<br>JULIET J. BLACK, )<br>)<br>      Defendant - Appellee. )<br>) | ORDER |

This matter is before the court on appeal from the United States Bankruptcy Court for the Eastern District of North Carolina. Plaintiff-appellant ("plaintiff") challenges the bankruptcy court's order granting summary judgment in favor of defendant-appellee ("defendant") on plaintiff's claims filed in an adversary proceeding, case number 16-00031-5. See Hurlburt v. Black (In re Hurlburt), 572 B.R. 160, 162 (Bankr. E.D.N.C. 2017) ("Hurlburt"). The issues raised have been briefed fully and in this posture are ripe for ruling. For the reasons that follow, the judgment of the bankruptcy court is affirmed.

## BACKGROUND

In conjunction with plaintiff's purchase of residential real property located at 130 South Navassa Road, Leland, North Carolina 28451 (the "property") from defendant in May 2004,

plaintiff entered into a seller-financed promissory note and purchase-money deed of trust in favor of defendant in the principal amount of $131,000.00.  Under the terms of the note, the principal balance accrued interest at the rate of 6% per annum and was payable over 119 monthly installments at the rate of $785.41, with a balloon payment for the remaining balance due May 26, 2014.

When the balloon payment remained unpaid in accordance with the terms of the note, defendant initiated foreclosure January 29, 2016, in Brunswick County, said action bearing special proceedings file number 16 SP 49.  On April 13, 2016, plaintiff initiated a Chapter 13 bankruptcy proceeding, which halted foreclosure proceedings.  In his petition, plaintiff listed the value of the property as $40,000.00.  On April 13, 2016, the same day he filed his petition, plaintiff filed a complaint in the adversary proceeding entitled "Complaint to Quiet Title, Determine Validity, Priority, and Extent of Lien, in the Alternative to Avoid Lien, and Objection to Claim of Juliet J. Black," followed by a similarly captioned amended pleading, filed June 24, 2016.  Between the two filing dates, on June 13, 2016, defendant filed a proof of claim, in order to make a claim for payment in the bankruptcy action, in the amount of $131,000.00, consisting of a secured claim designated in the amount of $40,000.00 and an unsecured claim designated in the amount of $91,000.00.  The next day, defendant filed an amended proof of claim in the amount of $180,971.72 but did not designate how much of that amount was secured or unsecured.

In order entered December 5, 2016, the bankruptcy court determined the deed of trust was valid but reserved ruling on other pending issues as premature.  See In re Hurlburt, No. 16-00031-5-SWH-AP, 2016 WL 7076980, at *2 (Bankr. E.D.N.C. Dec. 5, 2016).[1]

---

[1] The deed of trust is recorded in the Brunswick County Registry, Book 1951, Page 1170.  The deed of trust was filed on May 26, 2004 and incorrectly stated the grantor is indebted to the beneficiary "in the principal sum of No Dollars and 00/1000." (Am. Compl. (DE 2-2), Ex. B).  According to the bankruptcy court, on May 28, 2009, the closing attorney for this transaction filed an affidavit of correction of typographical or other minor error, correcting the deed of

After the bankruptcy court entered its order finding that defendant held a valid lien on the property, plaintiff filed an amended Chapter 13 plan proposing to treat defendant's claim as secured in the amount of $34,132.19, representing the $40,000.00 asserted value of the property minus a tax lien held by Brunswick County in the amount of $5,867.81. The plan proposed to pay defendant's secured claim in full at the rate of 4.5% per annum. It did not propose any payment of the balance due under the note. A second amended plan was filed on February 23, 2017, in part revising the amount of the secured claim to reflect higher appraised value of the property of $47,000.00, resulting in a secured claim of $41,132.19.

Also on February 23, 2017, defendant filed an objection to plaintiff's amended plan, asserting that pursuant to 11 U.S.C. § 1322(b)(2) ("anti-modification provision") plaintiff cannot modify defendant's rights because defendant is a creditor secured only by a security interest in real property that is the debtor's principal residence, that plaintiff must pay defendant's claim in full with interest, and that plaintiff is required to pay in full even without sufficient disposable income to fund the plan.

On March 9, 2017, defendant filed a motion for summary judgment with respect to the legal issues raised in her objection and further requested that the legal issues be considered separately from confirmation of plaintiff's plan. Meanwhile, the parties also briefed the remaining issues

---

trust to correctly state the grantor is indebted to the beneficiary "in the principal sum of One Hundred Thirty One Thousand & 00 Dollars." In re Hurlburt, No. 16-00031-5-SWH-AP, 2016 WL 7076980, at *1 (Bankr. E.D.N.C. Dec. 5, 2016); (Am. Compl. (DE 2-2), Ex. C). The bankruptcy court held "the original Deed of Trust sufficiently identifies the obligation and is valid" and that "[a]lthough the Deed of Trust omits the amount of the lien, it directs an inquirer to the source of such information." Id. at *2.

3

contained in defendant's motion for summary judgment in the adversary proceeding; in his response brief, plaintiff requested that summary judgment be entered in his favor.[2]

A hearing on the objection, defendant's motion for summary judgment on the legal issue raised in the objection, and cross-motions for summary judgment in the adversary proceeding was held in Wilmington, North Carolina on April 13, 2017.  The court, in the instant order on appeal, held pursuant to 11 U.S.C. § 1322(b)(2), the United States Supreme Court's holding in Nobelman v. American Savings Bank, 508 U.S. 324 (1993), and the United States Court of Appeals for the Fourth Circuit's holding in Witt v. United Companies Lending Corp., (In re Witt), 113 F.3d 508 (4th Cir. 1997), that plaintiff is not allowed to modify the rights of defendant and plaintiff must pay defendant's claim in full, thereby rejecting plaintiff's second amended plan.

This appeal followed.[3]  Plaintiff argues that either the Fourth Circuit's holding in Witt does not apply to the present situation or, if it does, Witt was wrongly decided.  In either instance, plaintiff argues that he owes defendant only that portion of the debt that reflects the value of the home and not the balance of the note.

## COURT'S DISCUSSION

A.   Standard of Review

This court has jurisdiction over plaintiff's appeal pursuant to 28 U.S.C. § 158(a)(1).  On appeal from the bankruptcy court, this court reviews findings of fact for clear error and conclusions

---

[2] In addition, the National Association of Consumer Bankruptcy Attorneys submitted an amicus curiae brief on behalf of plaintiff.

[3] Plaintiff also filed a motion for certification of direct appeal to the Fourth Circuit Court of Appeals which it declined to hear.

of law de novo. Zurich Am. Ins. Co. v. Tessler (In re J. A. Jones, Inc.), 492 F.3d 242, 249 (4th Cir. 2007). Only legal issues are presented here for decision.

Federal Rule of Bankruptcy Procedure 7056 incorporates the standard for summary judgment articulated in Federal Rule of Civil Procedure 56. Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference

is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

The court may affirm the bankruptcy court on any ground supported by the record. See Helvering v. Gowran, 302 U.S. 238, 245–46 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").

B.    Analysis

The principal purpose of bankruptcy is "to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 381 (2007) (citing Grogan v. Garner, 498 U.S. 279, 286 (1991)). Plaintiff filed for Chapter 13 bankruptcy protection to stop pending foreclosure of his home. With the filing for Chapter 13 relief, plaintiff must propose a repayment plan. See 11 U.S.C. § 1321. In addition to mandatory plan provisions, § 1322(b)(11) provides that a plan may "include any other provision not inconsistent with [title 11]." As part of provisions governing repayment plans, § 1322(b)(2) states "the plan may . . . modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2).

The Supreme Court in Nobelman addressed § 1322(b)(2). In that case, the debtors' Chapter 13 plan proposed to modify or bifurcate the claim on debtors' principal residence into secured and unsecured claims and reduce the debt owed to fair market value of the residence. 508 U.S. at 326-27. The Court held § 1322(b)(2) prevents such bifurcation and protects the "rights of holders" of such claims that are enforceable under state law. Id. at 329. To determine what "rights of holders" were being protected, the Court stated

> The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "property interests are created and defined by state law." Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). See also Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). Moreover, we have specifically recognized that "the justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." Butner, supra, at 55, 99 S.Ct. 914. The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under Texas law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure . . . . See Record 135–140 (deed of trust); id., at 147–151 (promissory note); Tex. Prop. Code Ann. §§ 51.002–51.005 (Supp.1993). These are the rights that were "bargained for by the mortgagor and the mortgagee," Dewsnup v. Timm, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and are rights protected from modification by § 1322(b)(2).

Id. at 329–30 (emphasis added); see also Anderson v. Hancock, 820 F.3d 670, 673 (4th Cir. 2016) (citing Nobelman, 508 U.S. at 329) ("While '[t]he term 'rights' is nowhere defined in the Bankruptcy Code,' the Supreme Court has held that it includes those rights that are 'bargained for by the mortgagor and the mortgagee' and enforceable under state law.").[4]

---

[4] The real property at issue in Nobelman was located in Dallas, Texas. 508 U.S. at 325. Pursuant to Texas law, deficiency judgments, an unsecured money judgment against a borrower whose mortgage foreclosure sale did not produce sufficient funds to pay the underlying note in full, are allowed. See Tex. Prop. Code § 51.003 ("If the price at

7

In 1994, Congress added § 1322(c)(2) to the Bankruptcy Code, creating an exception to the anti-modification provision of § 1322(b)(2). This added section applies to loans that mature before the end of the bankruptcy plan and provides as follows:

> c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan <u>may provide for the payment of the claim as modified</u> pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2) (emphasis added). In turn, under § 1325(a)(5), a Chapter 13 bankruptcy plan can only be approved if it meets one of three conditions with respect to each "allowed secured claim": (A) the holder of the claim has accepted the plan; (B) the holder both retains its lien and receives property worth at least the allowed amount of the claim; or (C) the holder is given the property securing the claim. See <u>Witt</u>, 113 F.3d at 511 n.2.

Following the enactment of this provision, multiple courts found that § 1322(c)(2) overturned <u>Nobelman</u> and, pursuant to the incorporation of § 1325(a)(5), allowed for the modification or "strip down" of the rights of holders of a claim secured only by a security interest in real property that is the debtor's principal residence.[5] See, e.g., <u>American General Financial, Inc. v. Paschen, (In re Paschen)</u> 296 F.3d 1203, 1209 (11th Cir. 2002) ("§ 1322(c)(2) was intended to except short-term and balloon mortgages from [§ 1322(b)(2)'s] reach, thereby overruling <u>Nobelman</u> insofar as it applied to [those] types of mortgages") (interior citation omitted); <u>id.</u> at 1206 ("Section 1325(a)(5)

---

which real property is sold at a foreclosure sale under Section 51.002 is less than the unpaid balance of the indebtedness secured by the real property, resulting in a deficiency, any action brought to recover the deficiency must be brought within two years of the foreclosure sale and is governed by this section.").

[5] This ability to "strip down" a claim is also referred to as "cram down." See <u>Hurlburt</u>, 572 B.R. at 162 ("The issue before the court is whether a chapter 13 debtor may 'cram down' the claim of a creditor secured only by a seller-financed purchase-money deed of trust on the debtor's residence to the value of the real property.").

is recognized as the source of a Chapter 13 debtor's authority to bifurcate secured claims and to 'strip down' the value of the claim to an amount equal to the value of the collateral.").

However, the Fourth Circuit in Witt addressed the addition of § 1322(c)(2) as follows:

> Here we must decide whether 11 U.S.C. § 1322(c)(2), enacted as part of the Bankruptcy Reform Act of 1994, allows Chapter 13 debtors to bifurcate undersecured home mortgage loans into separate secured and unsecured claims. Before § 1322(c)(2) was enacted, the Supreme Court in [Nobelman] held that another provision, § 1322(b)(2), prohibited a Chapter 13 debtor from bifurcating home mortgage debt. In their proposed Chapter 13 plan in this case, debtors . . . bifurcated their home mortgage debt owed to [defendant]. When [defendant] objected to confirmation of the plan, the Witts argued that § 1322(c)(2) should be interpreted to overrule Nobelman and permit bifurcation . . . . We agree with the district court that § 1322(c)(2) does not allow bifurcation.

Witt, 113 F.3d at 509.[6] In Witt, the debtors' Chapter 13 plan proposed to modify or bifurcate the claim on the debtors' principal residence into secured and unsecured claims and pay the full amount of the secured portion of the debt over five years but only 30% of the unsecured portion of the claim. Id. at 509-10. The court held that § 1322(c)(2) allowed only the modification of the payment of the claim, not the modification of the claim itself. Therefore, the court held that the Witts must "pay back the full amount of their mortgage loan," but that § 1322(c)(2) allows the Witts to pay back that debt "over time" pursuant to a bankruptcy plan of repayment, instead of having to tender "immediate payment" as was the case prior to the enactment of § 1322(c)(2). Id. at 512 and 514.

Basing his argument on N.C. Gen. Stat. § 45–21.38 ("North Carolina's anti-deficiency statute"), plaintiff argues that he is not precluded by the bankruptcy code, Nobelman, or Witt from

---

[6] The real property at issue in Witt was located in Appomattox County, Virginia. 113 F.3d at 509. Pursuant to Virginia law, deficiency judgments are allowed. See Va. Code Ann. §§ 55-59 to 55-66.6; see also In re Wilkinson, 175 B.R. 627 (1994) (holding under Virginia law, when Chapter 13 debtors were not specifically released from personal liability after creditor obtained deed in lieu of foreclosure on real property in partial satisfaction of promissory note secured by deed of trust on property, debtors remained liable for deficiency suffered by creditor when property was later sold).

owing defendant only that portion of the debt that reflects the value of the property. Plaintiff's argument essentially proceeds as follows:  First, plaintiff turns to § 506(a)(1) to determine the amount of defendant's secured claim. Pursuant to this section, defendant's claim is "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."  In other words, according to plaintiff, defendant has a secured claim in the amount of $41,132.19.  Second, plaintiff turns to § 502(b)(1) to determine how to treat the remainder of plaintiff's claim that is not secured.  Section 502(b)(1) directs the court to "allow such claim in such amount, except to the extent that – such claim is unenforceable against the debtor . . . under . . . applicable law."  Third, plaintiff turns to North Carolina law to conclude that the remainder of plaintiff's claim is not even an unsecured claim and is not actionable.  Under North Carolina law, according to plaintiff, because defendant seller-financed her home, she cannot have an unsecured claim.  See N.C. Gen. Stat. § 45–21.38;[7] Adams v. Cooper, 340 N.C. 242, 243 (1995)("[W]hen the purchase money debtor defaults, the purchase money creditor is limited <u>strictly to the property conveyed in all cases</u> in which the note and mortgage or deed of trust are executed to the seller of the real estate.") (interior citation omitted).

Unlike the case currently before this court, neither the Supreme Court in Nobelman nor the Fourth Circuit in Witt was confronted with a situation where the real property at issue was located

---

[7] N.C. Gen. Stat. § 45–21.38 provides in relevant part that "[i]n all sales of real property by mortgagees . . . to secure to the seller the payment of the balance of the purchase price of real property, the mortgagee . . . secured by such mortgage . . . shall not be entitled to a deficiency judgment on account of such mortgage . . . ."

in a state which has an anti-deficiency statute.[8]  Witt, however, is applicable to the court's current analysis in that Witt confirmed in this circuit that Nobelman was not overturned by the enactment of § 1322(c)(2).  Therefore, this court must determine, consistent with Nobelman, what rights were "bargained for by the mortgagor and the mortgagee" and are enforceable under North Carolina law, in particular the North Carolina's anti-deficiency statute.  See Nobelman, 508 U.S. at 329-30.

Here, defendant's rights as set forth in the note and deed include the right to receive repayment of the principal amount of $131,000.00 at a fixed rate of interest and to foreclose on the property in the event of default.  Pursuant to North Carolina law, once plaintiff defaulted, defendant's only option was to foreclose upon the real property securing the obligation, which defendant sought to do.[9]  However, when plaintiff filed a Chapter 13 bankruptcy petition, defendant's foreclosure proceedings were stayed.  Plaintiff then proposed a plan that requires repayment to defendant of $41,132.19 at 4.5 % rate of interest instead of $131,000.00 at the 6 % interest rate, as prescribed in the note.

---

[8] "Given the complexity of the anti-deficiency judgment legislation and the divergences between the various state laws, there is no consensus as to just how many US states have adopted non-recourse legislation. The accepted estimate, however, is around fifteen states . . . ." Dov Solomon, From the Great Depression to the Great Recession: On the Failure of Regulation in the Mortgage Market, 42 J. Legis. 162, 171 (2015/2016) (citing Todd J. Zywicki & Joseph D. Adamson, The Law and Economics of Subprime Lending, 80 U. Colo. L. Rev. 1, 30 n. 134 (2009) (estimating that around 15-20 states have adopted some type of anti-deficiency or non-recourse legislation); Andra C. Ghent & Marianna Kudlyak, Recourse and Residential Mortgage Default: Evidence from US States, 24 Rev. of Fin. Stud. 3139, 3143 (2011) (categorizing eleven states as having adopted non-recourse legislation); Ron Harris & Asher Meir, Non-Recourse Mortgages - A Fresh Start, 21 Am. Bankr. Inst. L. Rev. 119, 120 (2013) (estimating that between ten to fifteen states have adopted non-recourse legislation)).

[9] Under North Carolina's anti-deficiency statute, defendant would not have been able to bring suit on the note, notwithstanding the terms of the note.  (See DE 2-3, Ex. A (The note executed by plaintiff states that "[i]n the event of default . . . the holder may without further notice, declare the remainder of the principal sum, together with all interest accrued there on and the prepayment premium, if any, at once due and payable.")); Adams, 340 N.C. at 244 ("Our cases interpreting and applying the anti-deficiency statute have consistently held that the 1933 General Assembly intended it to prevent any suit on such a purchase money obligation other than one to foreclose upon the real property securing the obligation."

The court holds that plaintiff's proposed plan is an impermissible modification of defendant's rights inconsistent with § 1322(b)(2) as explained in Nobleman and Witt. Under the note and deed of trust, and consistent with North Carolina law, defendant bargained for the right first to be repaid the principal amount of $131,000.00, and failing that, to foreclose upon the real property securing the obligation upon default, neither of which is accomplished under plaintiff's proposed plan. Therefore, in order for defendant's right to not be impermissibly modified, first, plaintiff's proposed plan must provide for defendant to be repaid the principal amount of $131,000.00. Second, in the event that plaintiff defaults on those payments, defendant will be able to foreclose on the real property.[10] Additionally, under bankruptcy law, plaintiff receives the benefit of being able to pay the balance he owes over the time span of an approved plan, and, in the event of default, under North Carolina law, he will suffer no personal liability on the note. This holding is consistent with § 1322(b)(2), as explained in Nobleman and Witt, and North Carolina's anti-deficiency statute.[11]

The court also rejects plaintiff's argument that "Witt's holding erroneously interprets 11 U.S.C. § 1322(c)(2) and must be overruled to conform with every other federal court" that has

---

[10] Plaintiff argues "[i]f [defendant] were granted relief from the automatic stay and the real property were sold in foreclosure, [defendant] would only be entitled to . . . the value of the real property . . . . Whether in or out of bankruptcy, [defendant] can only receive the value of [plaintiff's] home, nothing more." (DE 13 at 14). Faced with this reality, defendant had the option of consenting to plaintiff's plan; however, defendant chose to not consent and instead pursued her rights in this appeal. It is not incumbent upon the court to dictate which way defendant should exercise her rights, only to ensure that defendant's rights are not impermissibly modified under the bankruptcy code and controlling precedent.

[11] The instant case is in contrast to those bankruptcy cases where the primary residence at issue has no value. See In re Davis, 716 F.3d 331, 335 (4th Cir. 2013) ("[A] completely valueless lien is classified as an unsecured claim under section 506(a). Only then does a bankruptcy court consider the rights of lienholders under section 1322, which affords protection to holders of secured claims against principal residences. Section 1322, however, expressly permits modification of the rights of unsecured creditors. The end result is that section 506(a), which classifies valueless liens as unsecured claims, operates with section 1322(b)(2) to permit a bankruptcy court, in a Chapter 13 case, to strip off a lien against a primary residence with no value.").

interpreted this provision. ( DE 13 at 15). Although the court recognizes the extensive criticism of the Witt decision found in courts outside the Fourth Circuit,[12] this court is, of course, bound by that decision.

## CONCLUSION

Based on the foregoing, the judgment of the bankruptcy court is AFFIRMED. Because the facts and legal arguments are adequately presented in the briefs and record, the court dispenses with the argument, as argument would not aid significantly the decisional process. The clerk is DIRECTED to close this case.

SO ORDERED, this the 19th day of December, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[12] See, e.g., Paschen, 296 F.3d at 1209 ("We note that the great weight of persuasive authority supports debtors' interpretation of § 1322(c)(2); In re Witt appears to be the only case interpreting the statute differently"); In re Mattson, 210 B.R. 157, 160 (Bankr. Minn. 1997) ("In Witt, the Fourth Circuit parses the sentence in a very odd way, by holding that the last clause 'as modified pursuant to § 1325(a)(5) of this title' modifies the word 'payment' rather than its direct antecedent 'claim.' Such a reading is unnatural and violates rules of both common sense and grammar, not to mention the last antecedent rule of statutory construction"); First Union Mort. Corp. v. Eubanks (In re Eubanks), 219 B.R. 468, 473 (6th Cir. B.A.P. 1998) ("The Witt court's reading of § 1322(c)(2) makes nonsense of the cross reference to § 1325(a)(5) . . . . If the cross reference to § 1325(a)(5) in § 1322(c)(2) permits 'payment modification' but not claim splitting, surrender of all collateral securing a claim of the sort described in § 1322(c)(2) leaves an unsecured debt that must be paid in full with interest to confirm a plan — possibly the most exalted status ever achieved by a nonpriority, unsecured claim under the Bankruptcy Code") (emphasis in original); 8-1322 Collier on Bankruptcy § 1322.17 (16th ed. 2017) ("The [Paschen] court properly rejected the strained reading of the language by [Witt] that had held otherwise, finding that reading to be contrary to accepted canons of statutory construction, as well as the great weight of authority, and inconsistent with other language in the subsection that specifically referred to section 1325(a)(5).").